Robert Scott *et al.*

*v.*

Isaac N. Bassett *et al.*

*Opinion filed February 21, 1902.*

1. Affidavits—*interested party may make affidavit for introducing records of deeds in suit against conservator.* Section 2 of the Evidence act, prohibiting parties from testifying in their behalf when any adverse party sues or defends as conservator, does not prevent such parties from making an affidavit, under section 36 of the Conveyance act, to lay the foundation for the introduction of records of conveyances, since such affidavit is allowed by the Conveyance act merely to dispense with the production of the original, instruments and to make the record competent evidence.

2. Same—*when affidavit for introducing records of deeds is defective.* A single affidavit intended to lay the foundation for the introduction of the records of several deeds is defective which states that *all* of the original deeds have not been intentionally destroyed or disposed of for the purpose of introducing a copy, since such statement would not be untrue if some of the deeds had been so destroyed or disposed of.

3. Conservators—*a conservator not liable to suit respecting ward's real estate.* Where, as in Illinois, a conservator has merely the care and management of his insane ward's real estate, without title thereto, an action affecting the title to such real estate should be brought against the ward, and the judgment must be against him, and not against the conservator.

4. Same—*form of judgment where defendant becomes insane during ejectment suit.* If the defendant to ejectment becomes insane during the pendency of the suit, and the name of his conservator is added, with that of the defendant, in the title of the suit, a judgment on a verdict against the insane defendant should be against him alone, and it is improper to award judgment and writ of possession against both the insane defendant and his conservator, and to enter judgment for costs against the conservator alone, to be paid out of assets in his hands as conservator.

Appeal from the Circuit Court of Mercer county; the Hon. W. H. Gest, Judge, presiding.

Brock & Scott, for appellant.

Bassett & Bassett, *pro se.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action of ejectment brought by appellees, Isaac N. Bassett and Thomas W. Bassett, against the appellant Robert Scott, which has been before us twice on previous appeals, and on each appeal the judgment for the plaintiffs was reversed. (*Scott* v. *Bassett*, 174 Ill. 390; *Scott* v. *Bassett*, 186 id. 98.) After the last reversal, the case having been re-instated in the circuit court, plaintiffs suggested that the defendant, Robert Scott, had become insane, and on their motion it was ordered that the appellant Scott S. Boden, his conservator, be made a party defendant, and he was added as a party on the record. The appearance of the conservator was entered, and he appeared at the trial which followed. At the conclusion of the evidence the court instructed the jury to find the defendant guilty and that the plaintiffs had title in fee. A verdict was returned in accordance with the instruction, and judgment was entered against said defendant Robert Scott, and also against Scott S. Boden, his conservator, and a writ of possession was awarded against both. No judgment for costs was entered against defendant Robert Scott, but the judgment was against Scott S. Boden, the conservator, for costs, payable out of any moneys or assets in his hands belonging to the estate of said Robert Scott, and execution was awarded therefor. An appeal was taken to this court in behalf of the ward, and also by the conservator.

The claim of title by plaintiffs was the same as on the former trials, by payment of taxes for seven years under color of title. They again offered the records of the deeds upon which their claim of color of title was founded, and it is again contended that the court erred in the admission of the records for want of sufficient preliminary proof. Plaintiffs made and filed their affidavit as ground for introducing the records, and the affidavit is objected to both on the ground that they were incom-

petent to make it and for insufficiency of its contents. The affidavit was made and filed in pursuance of section 36 of the act concerning conveyances, providing that any party to a cause may orally in court, or by affidavit filed in the cause, testify, and state, under oath, the facts which will enable such party to introduce in evidence records of conveyances. (Hurd's Stat. 1899, chap. 30, sec. 36, p. 409.) The first objection to the affidavit is based on the provisions of the act in regard to evidence and depositions in civil cases. (Hurd's Stat. 1899, chap. 51, p. 858.) Section 1 of that act removes the common law disqualification of witnesses on account of interest, and section 2 provides that no party shall be allowed to testify of his own motion or in his own behalf, by virtue of said section 1, when any adverse party sues or defends as conservator of any lunatic. Section 1 relates only to the qualification of parties to a suit, or persons interested in the event thereof, to testify as witnesses in the cause, and the exceptions of section 2 are limited to the provisions of section 1. There is no exception in the Conveyancing act, but all parties are in terms included within its provisions, and we do not think the exceptions contained in section 2 of the act concerning evidence apply, or were intended to apply, to the provision in question. The affidavit which a witness is allowed by the Conveyancing act to make, is merely to dispense with the production of original instruments and to make the record competent evidence. Plaintiffs were not disqualified to make affidavits in the cause by reason of the provision that they could not be called as witnesses or testify generally in the case.

The other objection is, that the affidavit did not apply to each deed, but to all of them collectively. It stated that plaintiffs desired to use copies of certain deeds, or the records of such deeds, in evidence in the suit as a part of their chain of title. It then gave a particular description of each deed, and the affidavit con-

cluded as follows: "Affiants, each for himself, state that they do not, either of them, have in their possession or control any of the original deeds aforesaid, and that it is not within the power of either of them to produce the same, or any of them, on the trial of this cause, and that to the best of each of their several and respective knowledge, all of said original deeds are not in the custody, control or the power of the plaintiffs to produce them or any of them; that the same have not been intentionally destroyed or in any manner disposed of for the purpose of introducing a copy or copies of the same in evidence in the place of the original deeds, and that it is not within the power of affiants, or either of them, to produce the originals of any of said deeds." It is insisted that notwithstanding the statement of the affidavit that all the original deeds were not in the custody, control or power of the plaintiffs, some one of them might have been, and that while all the deeds were not destroyed or disposed of for the purpose of introducing the copies, some or one of them might have been. The plaintiffs were required to show that the original of each deed was lost or not in their power, and that to the best of their knowledge such deed was not intentionally destroyed or in any manner disposed of, for the purpose of introducing a copy thereof in the place of the original. The first statement was, that the plaintiffs did not, either of them, have in their possession or control any of the original deeds, and that it was not within the power of either of them to produce the same, or any of them, on the trial of the cause, and the last statement was, that it was not within the power of plaintiffs, or either of them, to produce the originals of any of said deeds. The affidavit contained this statement applying to all the deeds: "That the same have not been intentionally destroyed or in any manner disposed of for the purpose of introducing a copy or copies of the same in evidence in the place of the original deeds." The affidavit was sufficient as to the custody and power

to produce the several deeds, but the statement with reference to the intentional destruction or disposition of the deeds applied to them collectively, and not severally. For aught that appears, some one or more of the deeds may have been destroyed or disposed of for the purpose of introducing a copy of the same, and the affidavit in that respect does not comply with the statute.

It is next contended that proper foundation was not laid for introduction of the collector's book to show payment of taxes. Section 163 of the Revenue act provides that whenever any person shall pay the taxes charged on any property, the collector shall enter such payment on his book and give a receipt therefor, and whenever it shall appear that any receipt for the payment of taxes shall be lost or destroyed, the entry so made may be read in evidence in lieu thereof. (Hurd's Stat. 1899, chap. 120, sec. 163, p. 1420.) We think there was sufficient evidence that the tax receipts had been lost or destroyed to allow the introduction of the collector's books. An unsuccessful search had been made for them, and it was a fair inference that they were lost or not in existence.

The verdict of the jury found the defendant guilty and that plaintiffs had an estate in fee simple in the premises described in the declaration, and it corresponded with the peremptory instruction. The court, after overruling a motion for a new trial, entered judgment against the defendant Robert Scott and Scott S. Boden, his conservator, and awarded a writ of possession against both. The judgment for costs was entered against the conservator alone, to be paid out of moneys and assets in his hands as conservator, belonging to his ward, and awarded execution against him for the same. Where a conservator is regarded as a mere curator of a lunatic, without title in the property of his ward, he is not liable to an action respecting such property, but the lunatic himself is the proper person to be sued. (16 Am. & Eng. Ency. of Law,—2d ed.—602.) If he has nothing but the charge

and management of land of his insane ward he cannot
sue or defend as conservator in an action for partition,
for the reason that he has no title. He can maintain an
action in his own name on a note or contract made to
him as conservator, and can sue as conservator for per-
sonal property and demands due the ward which he has
a right to reduce to possession, but when an action con-
cerns the title or estate of an insane person the suit and
judgment must be against him, and not against the con-
servator. Under our present statute the conservator has
the care and management of the real and personal estate
of his ward. (Hurd's Stat. 1899, chap. 86, p. 1130.) He is
required to take charge of and inventory such estate, and
he may sue for and receive in his own name, as conser-
vator, personal property of and demands due his ward.
This is the only provision of the statute for suit by the
conservator in his own name. The other provisions are
that he shall appear for and represent his ward in all
suits and proceedings, unless another person is appointed
for that purpose, as conservator or next friend. The
court, however, has power to appoint a conservator or
next friend to defend the interest of the ward in any
suit or matter pending in such court, and may allow any
person, as next friend for the lunatic, to commence, prose-
cute or defend any suit in his behalf, subject to the direc-
tion of the court. The statute does not contemplate suits
by or against the conservator generally, and the court
has a right to supersede him and substitute a guardian
*ad litem* or next friend. The statute does not oust courts
of law of jurisdiction over insane persons, but as the con-
servator is bound to defend for his ward, there should
be some personal notice to him or service upon him in
an action at law as well as upon the defendant, and in
equity he should be joined as a defendant in a proceed-
ing affecting his ward, so that he may have notice and
protect the ward's interest. The statute has been changed
since the decision in the case of *Morgan* v. *Hoyt*, 69 Ill.

489. It then provided as follows: "The said conservator may sue and be sued as the representative of the person for whom he is appointed conservator as aforesaid; and execution may issue in the name of, and against the said conservator, as representative as aforesaid, and all the property of such person may be sold to pay his or her just debts that might or could be sold in other case." (Gross' Stat. 1869, sec. 6, p. 332.) That provision was eliminated from the statute in the revision of 1874, and other and different provisions were substituted which now govern the prosecution and defense of suits. The defendant became insane during the pendency of this suit, and under section 20 of the act in relation to abatement the suit did not abate, but it could be defended by the conservator, or the court might appoint a guardian *ad litem* for the defendant. (Hurd's Stat. 1899, chap. 1, sec. 20, p. 99.) That section says that the cause may be defended by the conservator in like manner as by an executor or administrator in case of the death of a party; but that provision must be read in connection with the statute relating to conservators and the defense of suits against insane persons. Moreover, Scott S. Boden, the conservator, was not substituted as a defendant, as an administrator or executor would have been in the case of the death of a party. His name was added with that of the defendant in the title of the cause, but he only appeared to represent his ward. The verdict was not against him, but against the defendant. The suit related to the title and estate of defendant, Robert Scott, and he was a proper defendant, and the only one against whom judgment could be entered.

The judgment must be reversed, and inasmuch as the case will be tried again we do not express any opinion as to whether the evidence justified the peremptory instruction of the court to find the defendant guilty.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*